ANNA E. JOHNSON *vs.* WARNER BROS. CIRCUIT
MANAGEMENT CORPORATION.

Worcester.   September 27, 1938. — October 26, 1938.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence,* Theatre.

An action for personal injuries, sustained in a fall down steps in an aisle
of a motion picture theatre caused by slipping upon a paper bag on
the steps, could not be maintained where there was no direct evidence,
nor evidence warranting an inference, as to how the bag came to be
in the aisle or how long it had been there; without such evidence, the
absence of an usher was immaterial.

TORT.   Writ in the Superior Court dated June 4, 1937.

The action was referred to an auditor, whose findings were
not to be final, and afterwards was heard by *Donnelly,* J.,
who found for the plaintiff in the sum of $2,115.   The de-
fendant alleged exceptions.

*J. W. Ceaty,* (*J. Joseph McCarthy* with him,) for the de-
fendant.

*J. J. Mullan, Jr.,* for the plaintiff.

Cox, J.   The trial judge, sitting without jury, denied the
defendant's motion that the "court enter a general verdict
for the defendant," and found for the plaintiff.   The de-
fendant's only exception is to the denial of this motion,
which we treat as one that a finding be entered for the
defendant, and as raising only the question whether as
matter of law upon all the evidence a finding in favor of the
plaintiff was permissible.   *Menici* v. *Orton Crane & Shovel
Co.* 285 Mass. 499, and cases cited.   At the trial it was
agreed that, on the issue of liability, the only evidence to
be offered would be the report of an auditor to whom the
case had been referred.

The auditor found that the plaintiff and three members
of her family went to the defendant's theatre about three
o'clock in the afternoon of March 26, 1937.   The customary

lights were on, including the aisle lights, and the balcony, where the plaintiff sat, and the aisle in question were reasonably well lighted, "considering the use of the theatre for the display of motion pictures." See *Rosston* v. *Sullivan,* 278 Mass. 31, 35. Upon entering the balcony, the plaintiff seated herself in the fifth row at the right of an ascending aisle. At six o'clock in the evening she started to leave, and her husband preceded her down the stairs of the aisle. As the plaintiff stepped into the aisle and "stepped down unassisted from the stair tread opposite her row of seats she stepped onto a paper bag on the next stair below, slipped and fell backwards and slid to the foot of the aisle and doubled up into a heap on her right side." As to the presence of the bag in the aisle, the auditor found as follows: "March 26 was Good Friday, and the attendance at the theatre on this day is always very small, and . . . between 3 and 4 P.M. ninety-eight tickets were sold, between 4 and 5 P.M. seventy-two tickets, between 5 and 6 sixty-four tickets, these being the total sales for the entire theatre during those hours. I find that there were very few patrons seated in the balcony while the plaintiff was there. There were none in the row immediately in front of her or on the opposite side of the aisle and there were none in her rear and a very few in the lower rows in front of her, and the plaintiff observed no one passing up and down the aisle in question while she was there. I find that neither the plaintiff or any member of her family observed the paper bag on the stairway as they entered the balcony at 3 P.M., or while they sat in their seats, nor did they observe it until after the plaintiff stepped on it as she started down the balcony aisle. I find that the bag was a brown manila paper bag about seven or eight inches long and four or five inches wide; that it was slightly rumpled and wrinkled on its surface, that it was comparatively clean, that there was no printing on it and there were no contents to indicate its use. I do not find that the plaintiff or her family had brought any such bag into the theatre. There was no direct evidence as to how it came to be on the stairs of the aisle, or how long it had been there. I find that customarily there were three

ushers on duty in the theatre in the afternoon, two on the main floor and one in the balcony; that it is the duty of ushers who are equipped with flashlights to direct patrons to the seats if they wish to be directed; that many patrons find their own seats unattended by the ushers; that it is the duty of the ushers to inspect the aisle lights and remove obstructions in the aisles and notify the electricians of any defective bulbs in the aisle lights or elsewhere. I further find that the theatre is cleaned nightly and the aisle inspected the following morning by the manager. I find that on this afternoon there was no usher on duty in the balcony as the plaintiff and her family entered it, nor at any time during the three hours the plaintiff was there, and that an usher came to her assistance after her fall when summoned from below by another lady patron. As an inference from these facts I find that the paper bag was on the aisle stairway for a sufficient length of time so that the defendant's usher should have observed it and removed it and that this failure to do so was evidence of negligence. I find the plaintiff did not see the bag on the stairway as she stepped down upon it but that her failure to observe the bag on the stairway as she started down the aisle was not contributory negligence on her part in view of the semi-darkened condition of the theatre at that time."

The defendant owed to the plaintiff, as an invitee, the general duty to use ordinary care and diligence to put and keep its theatre in a reasonably safe condition, having regard to the construction of the place, the character of the entertainment given, and the customary conduct of persons attending. *Rosston* v. *Sullivan*, 278 Mass. 31, 34. *Rynn* v. *Fox-New England Theatres, Inc.* 299 Mass. 258. It is to be noted that the auditor drew his inference of negligence from the facts that he found, and not from all the evidence. This distinguishes the case at bar from *J. W. Grady Co.* v. *Herrick*, 288 Mass. 304, 310. The question for decision is whether the general finding of the trial judge was permissible as a result of drawing all rational inferences and the finding of all subsidiary facts tending to support that conclusion of which the case is susceptible. See *Ballou* v.

*Fitzpatrick*, 283 Mass. 336, 338, 339; *Savin* v. *Block*, 297 Mass. 487, 489. We do not think it was. There was no direct evidence as to when or how the paper bag came to be upon the aisle. Its described appearance does not permit a finding "with any definiteness as to the length of the time it had been on the stairs preceding the fall." *Newell* v. *Wm. Filene's Sons Co.* 296 Mass. 489. *McBreen* v. *Collins*, 284 Mass. 253, and cases cited. *Renzi* v. *Boston Elevated Railway*, 293 Mass. 228. For upwards of three hours the plaintiff sat in her seat, the second in from the aisle, the end seat being occupied by her husband, and the auditor's finding is that "the plaintiff observed no one passing up and down the aisle in question while she was there." This finding, at best, is merely negative and of no value as evidence that no one passed up and down the aisle, as it does not appear that the plaintiff was paying any attention for the purpose of observation. *Gibb* v. *Hardwick*, 241 Mass. 546, 549. *Cross* v. *Albee*, 250 Mass. 170, 177. *Hough* v. *Boston Elevated Railway*, 262 Mass. 91, 93–94. The finding that neither the plaintiff nor any member of her family observed the paper bag on the stairway as she entered the balcony at three o'clock does not warrant the inference that the bag was in the aisle at that time. After the plaintiff's fall her husband returned to the balcony. The lighting conditions were then the same as before the accident, and the paper bag was discernible on the stairway. The report does not disclose just where the bag was at that time, but the negative evidence relative to its not having been observed, especially in view of the finding that it was discernible, has no probative value to establish the fact that it was there when the plaintiff entered the balcony. The finding "I do not find that the plaintiff or her family had brought any such bag into the theatre" is merely negative and of no more probative value than the findings that the plaintiff observed no one passing up and down the aisle, and that the bag was not seen. It was the duty of the usher to remove obstructions in the aisles, and, on the afternoon in question, no usher was on duty in the balcony at any time while the plaintiff was there. The

absence of the usher, however, is not important, unless the evidence warrants a finding that the bag was actually on the stairway for a long enough period of time so that his failure, whether he was present or not, to discover and remove it amounts to negligence. Inasmuch as there was no premise upon which to base the conclusion of negligence, the conclusion falls. *Renzi* v. *Boston Elevated Railway*, 293 Mass. 228, 231. The case is distinguishable from cases like *Anjou* v. *Boston Elevated Railway*, 208 Mass. 273.

The motion of the defendant should have been granted.

*Exception sustained.*

*Judgment for the defendant.*